[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, involves the dissolution of a limited liability corporation, Albrizio Designs of Weston, Connecticut, LLC (Albrizio Designs), which was engaged in producing and selling decorative pillows. The members of this company were the plaintiff, Randi Regenstein, who owned a 48% interest, and the defendant, Joann Simon, who owned 52%.
The plaintiff brought a six-count complaint against the defendant. In the first count, the plaintiff alleges that she and the defendant entered CT Page 14859 into a written operating agreement dated December 1, 1995, which provided, among other things, that: (1) either party could sign checks from the company's bank account except for "material expenditures outside the scope of the ordinary course of business," in which event both parties had to sign the check; (2) if either party left the company, and the company continued to operate, that party would not engage in activities "financially adverse" to the company for one year; and (3) the parties also agreed to "utilize their respective best effort on behalf of the Company and not engage in any activities that would undermine the successful operation of the Company." Furthermore, the plaintiff alleges that the defendant breached this contract and the "restrictive covenant" therein by leaving the company, by contacting the company's customers, suppliers and vendors in an attempt to get them as clients and suppliers for a new business she formed, by taking all the funds out of the company's bank account, and by unilaterally liquidating the company's assets.
The remaining counts allege breach of fiduciary duties, breach of the covenant of good faith and fair dealing, interference with business expectations, a conversion and misappropriation. In her claims for relief, the plaintiff seeks monetary and punitive damages, an accounting and an injunction preventing the defendant from engaging in business adverse to the company.
The defendant denied the material allegations of the complaint and filed special defenses and a counterclaim. In the first of the special defenses, the defendant contends that the plaintiff withdrew from the company and violated General Statutes § 34-180[1] by engaging in acts of disassociation. In the next special defense, the defendant claims that as a member of Albrizio Designs she complied with General Statutes §§ 34-140 and 34-141[2] In the last defense, the defendant alleges that Albrizio Designs is a "necessary" party but had not been joined in this action. This defense was not briefed and is deemed abandoned.
In the counterclaim, the defendant alleges in the first of five counts that the plaintiff breached the contract between the parties when she disassociated herself from Albrizio Designs in November of 1998, and removed personal property and accounts from the company's office; that the plaintiff wrongfully contacted a factor in Maryland which was holding approximately $15,500 of the company's funds in escrow and persuaded it not to remit the money to Albrizio Designs, thus interfering with the company's contractual relationship with the factor; and that the plaintiff converted money, property and accounts belonging to Albrizio Designs.
In the other counts of the counterclaim, the defendant alleges that the CT Page 14860 plaintiff breached her fiduciary duties, breached the covenant of good faith and fair dealing, tortiously interfered with the company's business expectations and contracts, and engaged in conversion and misappropriation of personal property, goods and accounts.
At the trial, the evidence disclosed that in early 1995 the defendant formed Albrizio Designs of Weston Connecticut, which became a going business. However, in December, 1995, she sold 48% of the company to the plaintiff who paid her $15,000, and together they formed a new limited liability company. The defendant was to concentrate her efforts on the designing and manufacturing of the decorative pillows, and the plaintiff was to concentrate on sales. The company did not do too well financially and by 1998 was losing money rapidly.
On November 13, 1998, the defendant advised the plaintiff of her decision to immediately dissolve or terminate the company, and thereafter both parties embarked on courses of conduct aimed at maximizing their own personal interests instead of engaging in an orderly and cooperative winding down of the company with assistance from professionals, and in accordance with the relevant statutes. The plaintiff started this suit less than three weeks after being notified of the defendant's decision to wind down the company. She contacted certain customers and asked them to send what money they owed Albrizio Designs directly to her. The plaintiff went to a trade show in Dallas and brought home with her pillows and related items belonging to Albrizio Designs, which were worth, according to the defendant, approximately $14,000. She removed goods and materials from the company's office in Norwalk, worth around $10,000, again according to the defendant. In late February or early March of 1999, about three months after Albrizio Designs ceased operations, the plaintiff formed her own decorative pillow business under the name of R R Homes.
As soon as the defendant announced her intention to wind down Albrizio Designs, she immediately withdrew about $13,000 from the company's bank account at what is now known as the Lafayette American Bank in Weston. On that same day, November 13, 1998, the defendant formed a new company, Albrizio Limited, LLC, conducting the same kind of business. She contacted various customers and vendors of Albrizia Designs both by letter and telephone and tried to get them to switch their business to her new company, Albrizio Limited, LLC, and did succeed, for example, in switching pending orders from a top customer, Domaine, a retail furniture chain, to her own company. The defendant removed all the business records, some equipment, patterns, pillows, trim and fill from the office of Albrizio Designs, and used them for her new business. She sold some of the pillows that were in the company's inventory for approximately $3,300. CT Page 14861
As demonstrated by the above findings of fact, both parties did essentially the same things, including each forming her own company to sell decorative pillows in competition with the other. Under these circumstances, the court concludes that the plaintiff and the defendant each proved her complaint and counterclaim, respectively, in that each party breached the contract by engaging in activities undermining the operation and/or the winding down of Albrizio Designs.
At this time, there does not appear to be a need to appoint a receiver because Albrizio Designs is defunct.[3] An accounting was sought pursuant to General Statutes § 52-401 et seq., but the only remaining funds belonging to Albrizio Designs at this time are the $15,568 held by the factor in Maryland, Reservoir Capital Corporation, d/b/a Cambridge Factors, and approximately $3,000 held in escrow by the plaintiff's attorney. This sum represents accounts receivable belonging to Albrizio Designs, which came into the plaintiff's possession.
The court will not attempt to apportion blame between the two parties but rather rules that the defendant is entitled to 52% of these funds, and the plaintiff is entitled to the balance, 42%. The factor in Maryland is directed to send the money it has been holding in escrow, less legal fees incurred in its interpleader action in Maryland, to the order of counsel for the two parties, Attorneys Spirer and Moore, and these attorneys can work out the division of the money in accordance with the above percentages.[4]
The court is well aware that there are some alleged creditors of Albrizia Designs. However, the court does not believe it is authorized or should engage in determining the legitimacy of their claims because these alleged creditors are not parties to this present action. If the plaintiff or the defendant believes that these claims should be evaluated and paid where necessary, then such party can seek either the appointment of a receiver or a supplementary hearing by this court to rule on the claims of creditors. This may be arranged by a motion to reconsider and I scheduled for a hearing through the Case Flow office.
No costs are to be taxed to either party.
So Ordered.
Dated at Stamford, Connecticut, this 17th day of October, 2001.
William B. Lewis, Judge T.R.